AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: s/Bow Bottomly 06/17/2025

# UNITED STATES DISTRICT COURT
### for the
### Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**Person of Shawn Marlow;**<br>**DOB: XX/XX/1992** | )<br>)<br>)<br>)<br>)<br>) |

Case No. M-25-396-STE

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference herein

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference herein

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Material Containing Child Pornography |
| 18 U.S.C. § 2252A(a)(2) | Distribution of Child Pornography |

The application is based on these facts:

See the Affidavit of FBI Special Agent Marisol Flores, which is incorporated by reference herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Marisol Flores, Special Agent**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Jun 17, 2025**

**Lawton, OK**

City and state: ███████████

_____
*Judge's signature*

**Shon T. Erwin, U.S. Magistrate Judge**
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Marisol Flores, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

### INTRODUCTION

1.      I have been employed as a Special Agent (SA) with the Federal Bureau of Investigation (FBI) since May 2015, and I am currently assigned to the Oklahoma City Division. I am currently assigned to investigate violations of federal law involving the exploitation of children. I have gained expertise in conducting such investigations through everyday work in my current role as an SA with the FBI.

2.      As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3.      I am investigating the online activities of Shawn Marlow. As shown below, there is probable cause to believe that Shawn Marlow (Marlow) (SUBJECT) possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and distributed child pornography in violation of 18 U.S.C. § 2252A(a)(2). I submit this Affidavit in support of a search warrant authorizing a search of Marlow, as well as a search of a gray Dodge Ram bearing Oklahoma license plate QBW431 (the "SUBJECT VEHICLE"). Located on Marlow and in the SUBJECT VEHICLE, I seek to seize evidence, fruits, and instrumentalities of the foregoing criminal violations, including Marlow's devices he uses for the purposes of possessing, viewing, or distributing child pornography, and any other

1

electronic devices to which Marlow could have transferred files to.  I request authority to search Marlow, the SUBJECT VEHICLE, and any computer (as broadly defined in 18 U.S.C. § 1030(e)) reasonably believed to belong to or have been used by Shawn Marlow located therein, where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

4.      Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the foregoing violations are presently located on the SUBJECT and in the SUBJECT VEHICLE.

## **BACKGROUND OF THE INVESTIGATION**

5.      On March 14, 2025, at 20:41:22 UTC, Media Lab/Kik Electronic Service Provider submitted a CyberTip to the National Center for Missing and Exploited Children (NCMEC) regarding Kik Username: smh2022_c3t communicating with another Kik user how smh2022_c3t sexually abused their younger sister. Media Lab/Kik provided the following information to NCMEC:

Name:  Shawn Me

Address: Fort Smith, AR US

Date of Birth: 08-05-1992[1]

Email Address: shawn.marlow2020@gmail.com

---

[1] Shawn Marlow, SUBJECT, has a date of birth of August 5, 1992.

2

All email addresses reported?  Yes

ESP Product/Service: Kik

Screen/User Name: smh2022_c3t

Display Name: smh2022

ESP User ID: smh2022_c3t

Compromised Account?  No

IP Address:  12.75.0.97  03-13-2025  17:30:00 UTC

Estimated Location:  Fort Smith, Arkansas, US at 03-13-2025  17:30:00 UTC

6.      Media Lab/Kik described in their information to NCMEC the above user communicated the following to another user in a private chat on January 13, 2025, 02:23:27.014000 UTC:

"I started eating my sisters pussy when she was 6 and I was 13 she sucked my dick and swallowed my cum first time and 6 months later"

7.      On March 28, 2025, at 09:10:32 UTC, Media Lab/Kik Electronic Service Provider submitted a CyberTip to the NCMEC regarding Kik Username: smh2022 distributing pornography to another Kik user in a private chat.  Media Lab/Kik provided the following information to NCMEC:

Kik Messenger

Email Address: shawn.marlow2020@gmail.com

ESP Product/Service: Kik

Screen/User Name: smh2022

Display Name: Shawn Me

ESP User ID: smh2022_c3t

Media Lab/Kik described in their information to NCMEC the above user uploaded a video and an image to another user in a private chat. Those files are described in the following paragraphs.

8.    The video file, 2c9d6ba1-58ef-4c88-93e3-1dc50690367c.mp4, was uploaded on March 20, 2025, at 13:26:14 UTC. This video was one minute and forty seconds in length. The video depicted a prepubescent female, whose face was visible from the camera view, with a pink, short sleeve shirt on. The prepubescent female was performing oral sex on a pubescent female of an indeterminate age, who was naked from at least the waist down. The prepubescent female continues to perform oral sex on the other female while the other female is both standing and sitting throughout the video.

9.    The image file, 4eb0c4de-cb4a-432c-95a5-60bcf03e383a.jpg, was uploaded on March 20, 2025, at 13:24:44 UTC. This image depicted a prepubescent female lying on her back, naked from her chest down exposing her breast area and vagina. Standing next to the child is an adult male visible from the waist down with an erect penis. The prepubescent female is holding the adult male's erect penis with both of her hands.

10.    On March 26, 2025, an administrative subpoena was served to Kik, through its parent company MediaLab.ai. On May 3, 2025, Kik, through its parent company MediaLab.ai, provided information regarding email address: shawn.marlow2020@gmail.com; screen/user name: smh2022_c3t; display name: smh2022; ESP User ID: smh2022_c3t pursuant to an administrative subpoena served on March 26, 2025. The following is a portion of the information provided by Kik:

4

Date: May 3, 2025

First Name: Shawn

Last Name: Me

Email: shawn.marlow2020@gmail.com

Username: smh2022

Login IP: 70.182.93.83  52886  2024-10-13  16:58:45  CAN

Login IP: 70.182.71.46  59740  2024-11-10  18:00:02  CAN

Login IP: 70.182.71.46  53556  2025-02-16  18:01:00  CAN

11.    On March 26, 2025, an administrative subpoena was served to Google Inc. to provide information pertaining to email address: shawnmarlow2020@gmail.com. On March 26, 2025, Google Inc. responded with the following information:

Google Subscriber Information

Google Account ID: 762897971482

Name: Shawn Marlow

Given Name: Shawn

Family Name: Marlow

E-Mail: shawn.marlow2020@gmail.com

Created on: 2018-08-28  21:32:13 Z

Account Recovery

Recovery SMS: +14059683540 [US] = T-Mobile

Postal Address

Created on: 2018-11-20 21:35:34 UTC

Postal Code: 73106

Locality Name: Oklahoma City

Address Line: 1729 Northwest 3rd Street

Recipient Name: Shawn Marlow

Phone Number Saved to Address: + 1 405-446-6174

Postal Address

Created on: 2019-11-10 14:07:59 UTC

Postal Code: 73045

Locality Name: Harrah

Postal Code

Address Line: 9633 North Harrah Road

Recipient Name: Shawn Marlow

12.    Based on open-source records, it was determined IP addresses 70.182.71.46 and 70.182.93.83 were controlled by Cox Communications.  On or about May 6, 2025, an administrative subpoena was served to Cox Communications to provide information pertaining to Kik Login IP addresses: 70.182.93.83 on 2024-10-13 16:58:45 UTC Port 52886 and 70.182.71.46 on 2024-11-10 18:00:02 UTC Port 59740, and 2025-02-16 18:01:00 UTC Port 53556.  On or about May 12, 2025, Cox Communications responded with the following regarding both IP addresses:

Name: Nowakoski LLC DBA Tubs of Sud

Address: 3400 S Harrah Rd Harrah, OK 73045-6078

Telephone number: 405-637-5331

6

13. On April 9, 2025, an administrative subpoena was served to T-Mobile USA, provide information pertaining to telephone number: 405-968-3540. On or about April 22, 2025, T-Mobile USA, Inc. responded with the following information:

Subscriber Name: Ashley Livengood

Subscriber Address: 12629 NE 39th St., Spencer, OK 73084

Subscriber Status: Active

Activation Date: 08/15/2022

14. Open-source checks for Shawn Marlow, SUBJECT, show an address of 8555 N Dobbs Rd., Harrah, Oklahoma. One of two phone numbers listed for Shawn Marlow from January 2020 to January 2025, is 405-968-3540, the same number associated with the Google email described in paragraph 11. The other listed phone number is 405-827-0865. In addition, a financial record revealed Shawn Marlow, the SUBJECT, with a financial transaction on January 17, 2025. This recorded listed his associated phone number as 405-968-3540, and his associated address as 8555 N Dobbs Rd, Harrah, OK 73045-8873.

15. The Oklahoma Sex Offender Registry lists Shawn Michael Marlow, date of birth August 5, 1992, as a registered sex offender as of August 7, 2017, with a completion of sentence of March 2, 2026. Marlow's listed alias is Shawn Michael Heuer.[2] There are two crimes listed from Osage County,[3] Soliciting Sexual Conduct of Communication with Minor by use of Technology and Asst Lewd Exhibition, both of which have conviction

---

[2] Marlow's alias initials S.M.H. are the same initials in the Kik usernames: smh2022_c3t and smh2022.
[3] CR# 2015-367

dates of March 3, 2017. The home address for Shawn Marlow on the Oklahoma Sex Offender Registry is 8555 N Dobbs Rd, Harrah, Oklahoma 73045. The Employers listed is TAKE TEN TIRE at 1330 S. Eastern, Oklahoma City, Oklahoma. Shawn Marlow's vehicle listed on the Oklahoma Sex Offender Registry is a dark blue Dodge Ram 1500 (Pickup) with Oklahoma license plate QBW431, the SUBJECT VEHICLE. On February 14, 2025, the Oklahoma Department of Corrections has a record of Shawn Marlow's Sex Offender Registration and Notice of Duty to Register, with Marlow's address of 8555 N Dobbs Rd., Harrah, Oklahoma 73045, the SUBJECT VEHICLE listed, and a primary phone number of 405-827-0865.

16. The vehicle registration for Oklahoma license plate QBW431, the SUBJECT VEHICLE, checks back to a 2018 Dodge Ram 1500, gray in color, vehicle owner of Shawn M Marlow at 8555 N Dobbs Rd, Harrah, OK 73045873.

17. On June 11, 2025, law enforcement observed the 2018 Dodge Ram 1500 with Oklahoma license plate QBW431, the SUBJECT VEHICLE, at Take Ten Tire, 1330 S. Eastern, Oklahoma City, Oklahoma, Shawn Marlow's listed employment.

18. On June 16, 2025, law enforcement observed the 2018 Dodge Ram 1500 with Oklahoma license plate QBW431, the SUBJECT VEHICLE, at Take Ten Tire, 1330 S. Eastern, Oklahoma City, Oklahoma, Shawn Marlow's listed employment.

19. Based on my training and experience, and the facts presented thus far, I believe Shawn Marlow used Kik Usernames: smh2022_c3t and smh2022 to possess and distribute child pornography.

20. I am aware that computers and computer-related media are portable, and that

8

evidence can be stored on media as small as a fingernail-sized memory card. I have learned from other law enforcement officers who have executed search warrants in investigations of this nature, and my own training and experience, that computers and digital devices containing child pornography and associated communications can be located in vehicles and on the persons of occupants located on the premises. In addition, I am aware that people frequently transport their computers and cellular telephones on their person and in their vehicles. Due to the portable nature of electronic storage devices and the ease with which they can be transported and hidden, I am requesting authority to search Marlow's person and the SUBJECT VEHICLE.

## ADDITIONAL CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

21.     The following indicates characteristics of child pornography collectors that I have learned through training, working multiple investigations involving child pornography, and from other law enforcement officers with a background in child pornography investigations:

a.  The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

b.  The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these

9

individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

c.  The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, peer to peer, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

d.  The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

e.  The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or

commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

f. The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. They almost always maintain their collections in the privacy and security of their homes or other secure location. Often, these individuals possess child pornography on multiple devices or mediums, including their cell phones. Given the frequency of cell phone use in 2025, an individual's cell phone is most likely to be found near wherever that individual is located.

## DEFINITIONS

22.    The following definitions apply to this Affidavit and Attachment B:

a. "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text based online communications such as Internet forums and email.

b. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and

11

of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

c. "Child Sexual Abuse Material" includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

d. "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *See* 18 U.S.C. § 1030(e)(1).

e. "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not

limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

f. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alphanumeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

g. "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

h. "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It

13

commonly includes programs to run operating systems, applications, and utilities.

i. "Minor" means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

j. "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, see 18 U.S.C. Section 2256(8)(A), or that have been created, adapted, or modified to appear to depict an identifiable minor, see 18 U.S.C. Section 2256 (8)(C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. *See* 18 U.S.C. § 2256(2)(A).

k. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

l. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); mechanical form (including, but not limited to, phonograph records, printing, typing); or electrical, electronic or magnetic form (including, but not limited

14

to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

m. A "storage medium" or "storage device" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

n. A "website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as HyperText Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text transport Protocol (HTTP).

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

23.     Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

15

a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

24.    In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU). In cases

involving CSAM where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media).

25.    Furthermore, I know that modern tablets (a type of "computer," as broadly defined in 18 U.S.C. § 1030(e)) can typically "sync" with a traditional desktop or laptop computer. The purpose of syncing a tablet to a traditional computer is to back up data that is stored on the tablet so that it is not permanently lost if the portable tablet is lost or damaged. Also, tablet users may move files off the tablet and onto a computer to free up storage space on the tablet. Similarly, computer (*e.g.*, desktop computers, tablets, etc.) users may move files off of one computer onto another computer or digital file storage devices such as a thumb drive, a DVD, an external hard drive to free up space on the computer. For this reason, I am seeking authorization to seize all computers and digital file storage devices reasonably believed to belong to or have been used by SUBJECT, Shawn Marlow, or in his vehicle, the SUBJECT VEHICLE—not any particular computer.

26.    Finally, I know that many modern smart tablets and cell phones, including Apple and Samsung-brand tablets and cell phones, can be encrypted by the user using his finger and/or thumbprint or facial image to lock and unlock the device. Without the user's prints, the devices are difficult, if not impossible, for law

enforcement personnel to unlock. Accordingly, I am requesting that, to the extent law enforcement seizes any tablet or smart cell phone or other computer described in Attachment B during a search of the SUBJECT and SUBJECT VEHICLE, (described in Attachment A), and if such device(s) features such encryption, then law enforcement may, while executing the search warrant of the SUBJECT and SUBJECT's VEHICLE, use Marlow's finger and/or thumbprint and/or facial image with any such encryption feature to attempt to unlock the device.

## **CONCLUSION**

27.    Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that Shawn Marlow possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and distributed child pornography in violation of 18 U.S.C. § 2252A(a)(2). Additionally, there is probable cause to believe that evidence of the criminal offenses is located on Marlow and in the SUBJECT VEHICLE, and this evidence, listed in Attachment B to this Affidavit, incorporated herein by reference, is contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses. As described in the probable cause section, there is probable cause to believe Shawn Marlow violated the aforementioned statutes.  I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

MARISOL FLORES
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Signed and sworn before me this 17th day of June, 2025.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

19

## ATTACHMENT A

## <u>DESCRIPTION OF PERSON TO BE SEARCHED</u>

Shawn Marlow is a male with date of birth XX/XX/1992. A photograph of Marlow is provided below:



## ATTACHMENT B

### *DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED*

1.     All records, including those stored digitally, to the extent they are reasonably believed to belong to or be used by Shawn Marlow, pertaining to the production, receipt, distribution, or possession of child pornography, as defined in 18 USC 2256(8), or to the production, receipt, distribution, or possession of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 USC 2256(2), including:

   a.  Records and information relating to images or videos of suspected child pornography;

   b.  Records and information relating to communications between individuals about child pornography;

   c.  Records and information relating to the existence of sites on the internet that contain child pornography or that cater to those with an interest in child pornography;

   d.  Records and information relating to membership in online groups, clubs, or services that provide or make accessible child pornography to members;

   e.  Records and information relating to any e-mail accounts used to view, access, trade or distribute child pornography;

   f.  Records and information relating to malicious software;

2.     Computers or storage media used as a means to commit the violations described above.

21

3.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c.  evidence of the lack of such malicious software;

    d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

    e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

    f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m.  contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

23

The term "computer", as broadly defined in 18 U.S.C. § 1030(e), includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

If a smart cell/mobile phone/cell phone or other computer, as described herein, is found that is subject to seizure pursuant to this warrant and requires access by using a finger or thumbprint or facial recognition to unlock the device, then, while executing the search warrant, a law enforcement officer may press the finger or thumbprint of Shawn Marlow onto the device to try to unlock it or use his face to unlock the device via facial recognition.